## Case No. 16,861.

### VAN KLEECK et al. v. THURBER.

[1 Pa. Law J. 402.]

District Court, N. D. New York. 1842.

BANKRUPTCY — INVOLUNTARY PROCEEDINGS—ACTS OF BANKRUPTCY—FRAUDULENT ARREST— DISMISSAL OF PETITION.

1. It seems that the clause in the first section of the bankrupt act which makes it an act of bankruptcy for a debtor to "willingly or fraudulently procure himself to be arrested" extends to the case of a debtor who, in the state of New York, willingly or fraudulently procures himself to be arrested by a creditor, although he is not arrested, the laws of the state forbidding arrests in action founded on contract.

2. To render an act of preference an act of bankruptcy, it is not necessary that it should be shown to have been spontaneous.

3. A petition by a creditor for a decree of bankruptcy against his debtor will not be dismissed on the ground that a suit at law has been commenced and prosecuted to judgment by the petitioning creditor against the debtor since the filing of the petition.

In bankruptcy. The petition in this case charged the respondent [Ira L. Thurber] who was a retail merchant, with having on the 27th day of June last, in contemplation of bankruptcy, confessed a judgment to Isaiah Thurber for $1,236 56, besides cost, for the purpose of giving him a preference or priority over the other creditors of the respondent. The answer of the respondent set forth that a suit had been commenced against him by the said Isaiah Thurber, and that having no defence to the action he had given a plea of confession: but he denied that by so doing he had acted in contravention of the bankrupt act. Depositions had thereupon been taken, by which it appeared that on being pressed for payment by the petitioning creditors [W. H. Van Kleeck and E. Van Kleeck], to whom he owed about $1400. and who resided in New York, he went from his residence in the county of Owego to Utica, where his father resided, and put up at his father's house. That while there a suit was instituted against him, and that on the same day he gave a plea of confession comprising a debt owing by him to his brother-in-law, as well as the debt which he owed to his father; and containing a judgment at any time after the entry thereof. The judgment in question was entered on the same day. Many circumstances were shown tending strongly to prove that the suit was instituted with the full knowledge and consent of the respondent, and was in fact a concerted proceeding between his father and brother-in-law on the one side. and himself on the other. It appeared also that on the

first day of August, and a few days after this petition was filed, a suit was commenced by the petitioners against the respondent for the debt set forth in their petition, in which suit a judgment had been obtained, on which a fieri facias had been issued. But in the mean time all the respondent's property which was subject to execution had been sold on an execution issued on the judgment above mentioned in favour of the respondent's father and brother-in-law, and the proceeds fell short of satisfying the judgment. It was clear from the evidence that at the time the respondent confessed this judgment he had no well founded hope of being able to continue his business, and he soon afterwards, in fact, abandoned it.

Mr. Doolittle, for petitioning creditors.
Mr. Beardsley, for respondent.

CONKLING, District Judge. The prayer of the petition has been zealously and ably resisted by the counsel for the respondent, on the grounds (1) that the mere confession of a judgment to a bona fide creditor, even though done in contemplation of bankruptcy, and for the purpose of securing a preference or priority to such creditors, was not an act of bankruptcy; (2) that the act charged against the respondent in the present case was not voluntary, and that for this reason it did not constitute an act of bankruptcy; and (3) that the petitioning creditors having proceeded at law against the respondent after filing their petition in this court, had thereby forfeited their right further to prosecute their petition, and that upon this ground the petition ought to be dismissed.

The first section of the bankrupt act of 1841 [5 Stat. 440] declares that certain descriptions of persons, under certain specified circumstances, may be compulsorily declared bankrupt, whenever any such person "shall depart from the state, district, or territory, of which he is an inhabitant, with intent to defraud his creditors; or shall conceal himself to avoid being arrested; or shall willingly or fraudulently procure himself to be arrested, or his goods and chattels, lands, or tenements, to be attached, distrained, sequestered, or taken in execution; or shall remove his goods, chattels, and effects. or conceal them to prevent their being levied upon. or taken in execution. or by any other process; or make a fraudulent conveyance, assignment, sale, gift, or other transfer of his lands, tenements, goods or chattels, credits, or evidences of debt."

I agree with the respondent's counsel that no person can lawfully be declared a bankrupt in invitum, who is not proved to have committed some one of the acts above described. I fully acquit the respondent of any intention which independently of the bankrupt law could be pronounced fraudulent. Fearing that he should be unable to pay all that he owed, it was natural, and may not have been immoral for him to desire to secure his

relatives in preference to his other creditors. But it appeared to me entirely clear on the argument, and a deliberate examination of the evidence since has only strengthened my conviction, that the suit in which the plea of confession was given, was commenced with his knowledge and assent, express or implied, and in consequence of the information·which he voluntarily communicated to his father for the express purpose of having measures taken for his security. It is unnecessary to refer more particularly to the circumstances attending the transaction. They all point to one conclusion and afford no colour for any other. Did not the respondent then "willingly procure himself to be arrested," according to the just import of this clause in the bankrupt act? It is true there was actual arrest. The suit was commenced by the service of a declaration, without any antecedent process. This mode of instituting suits is authorized by the ·laws ·of this state, and is the mode as I under- ·stand, now usually resorted to. The service of à declaration is just as effectual for the purpose of bringing the defendant into court, and enabling the plaintiff to obtain a judgment against him, as the service of a capias generally was. The action in this case being founded on contract, the laws of New York moreover forbade the arrest of the defendant. If then the defendant willingly or fraudulently procured the suit to be ·commenced, did he not do precisely what is meant by the phrase in the bankrupt act, "willingly or fraudulently procure himself to be arrested?" It cannot be doubted that this clause embraces arrests on mesne process, if indeed it does not relate exclusively to such arrests. But the fact that such arrests cannot be made in this state, is but the accidental effect of recent local legislation. In most of the other states it is otherwise. To say, therefore, that if a debtor procures a suit to be commenced against him in a state where this can only be done by an arrest, is an act of bankruptcy; and that to do this in a state where no arrest can lawfully be made, is not—would be to make a wide distinction between acts, in all other respects, in substance and effect, identical; and, what is of the· last importance to consider, would moreover, in a most essential particular, destroy the uniformity of the bankrupt act. It was insisted that this part of the act ought to be strictly construed. This may be admitted: but it will not thence follow that the obvious intention of the legislature is to be disregarded, even though the words of the act, literally interpreted, may fall short, in significancy of what they were clearly intended to import. It is worthy of remark, moreover, that the clause in question appears ro have been copied verbatim from the English act, 1 Jac. I. c. 15, § 2. In England, it was literally significant of all that was intended; and the reasonable presumption is that congress designed to use it in the like comprehensive sense, though it was probably adopted without adverting to the fact that in this state

there could in general be no arrest of the person of the defendant in a suit against him for the recovery of a debt. I am strongly inclined to the opinion, therefore, that in order to effectuate the evident intention of the legislature, and to render the bankrupt act "uniform" in its effect, the clause in question· ought in this state to be so construed as to embrace the institution of a suit by the procurement of the debtor, in the mode and form prescribed by the local law, although this law does not permit an actual arrest. But there is another ground on which so far as the objection now under consideration is concerned, I am of the opinion that the respondent may be adjudged to have rendered himself amenable under the act. I did not understand his counsel to deny that the first and second clauses of the second section of the act were to be considered as explanatory· of that part of the first section which I have already quoted, nor that the acts of preference therein specified were acts of bankruptcy. Such is the view now taken of these clauses by the national courts, so far as I am informed, and in this light they seem to have been viewed especially by Mr. Justice Thompson in the case of Wakeman v. Hoyt [Case No. 17,051]. This first clause is as follows: "That all future payment, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser or surety, or other persons, any preference or priority over the general creditors of such bankrupts—shall be deemed utterly void, and a fraud upon this act." Now· I think nothing can be clearer than that the intention here was to forbid the giving of preferences in contemplation of bankruptcy of every form. The studious enumeration upon particular modes of doing so, is sufficiently indicative of this intention, to say nothing of the improbability and inconsistency of a different intention. It would have been very remarkable therefore, if, after all, the legislature had failed to use words which by fair interpretation, would embrace so common and so effectual a mode of giving preferences as that of voluntarily confessing judgment. And yet, the counsel for the respondent strenuously insisted that this was a case not provided for. He denied that a judgment was a "security;" and especially that it was so in the present case, because the defendant had no lands on which it could become a lien. If he had no lands, it was an accidental fact which may have rendered the security less effectual; but which in my judgment can have no influence upon the decision of the case. Nor have I any doubt that a judgment is to be deemed a security within the act; and especially where, as in this case, defendant by the express stipulations surrenders his legal right to a stay of execution. The judgment was given and obtained for the sole and avowed purpose of securing a priority, and has been effectively used for this purpose, by the sale

on execution of all the property of the defendant subject to execution, and by having been made the foundation of a creditor's bill to reach the defendant's rights in action.

2. But it is insisted that the security was not voluntarily given. I think the evidence fully warrants the opposite conclusion. The fact that within a few days after the respondent had made an appointment by correspondence with the petitioning creditors to meet them for the purpose, if possible, of effecting some satisfactory arrangement with them relative to the debt he owed them, he went to the residence of his father and communicated his situation to him and his brother-in-law—taken in connection with the incidents which followed—goes far to stamp him with the character of an original and voluntary actor in the whole transaction. It is said that a man who is sued for a debt which he really owes may lawfully give a cognovit, because in such a case he would be presumed to have acted, not voluntarily, but under the coercion of a suit, and for the purpose of saving costs. This may perhaps be admitted in reference to a suit commenced against the will of the defendant; though even in such a case, if it should appear that other creditors were prosecuting their claims simultaneously, there would be strong ground for holding that the debtor had no right thus to lend his aid to the one creditor in his effort to obtain a priority over the others. I repeat, however. that I consider the conclusion from the evidence to be irresistable, that the giving of the cognovit was but a part of one of the same transactions. to which the respondent is to be considered as having virtually been a party. In substance and legal effect, I deem it exactly equivalent to the execution by the respondent of a bond and warrant of attorney; and indeed it is not to be doubted, from the evidence in the case, that if the legal gentleman employed by the plaintiff, had advised this latter course. it would have been adopted. But is it necessary in order to bring an act of preference within the first clause of the second section of the bankrupt act, that the preference should appear to have been given voluntarily, or in other words, without threat, or solicitation on the part of the creditor? This is a very important question; because if this otherwise highly salutary provision is to be thus limited by construction, it is clear, I think, that the facility with which it may be evaded. is likely to render it little better than a dead letter. It is important to remark that the decisions in the English courts upon this point, which are supposed by the counsel for the respondent to afford countenance to the objection I am now considering, are not founded on any express provision in the English bankrupt acts, forbidding preferences, and declaring them fraudulent; like that in the American act; but that the doctrine established by these decisions has been deducted by the courts from the general spirit and design of the bankrupt laws. It was natural therefore, and in accordance with the cau-

tious and commendable spirit which so strongly characterises the adjudications of the English courts. that they should limit this doctrine in the manner they have done: though even in England this limitation is subject to very material exceptions and qualifications. See, amongst other cases, Thornton v. Hargreaves, 7 East, 544; Linton v. Bartlet, 3 Wils. 47, cited in Cowp. 124. But congress, in expressly adopting the general principle, condemnatory of preferences, have not thought proper, in terms at least, thus to limit it; and my opinion from the beginning has been, that the provision as it stands, ought to be literally interpreted. I have nevertheless felt trammelled by the course of decision in the English courts to which I have referred; and while upon the one hand I have hesitated to disregard them, on the other hand, I have been careful not to adopt them as a rule of decision—thus leaving the question open in this court for further and more mature consideration. I am at length however, happily relieved in a great measure, from the responsibility of deciding it. In the case of Wakeman v. Hoyt, already cited, it expressly appears from the report. that the security, the giving of which was charged as an act of unlawful preference, was given at the pressing instance of the creditors by whom it was received—and this circumstance appears to have been considered immaterial by Mr. Justice Thompson, who decided that the giving of the security in question was an act of bankruptcy. And in the case of Arnold v. Maynard [Case No. 561] the precise question now under consideration was one of the questions adjourned for final decision from the district court to the circuit court for the district of Massachusetts; and the decision of the latter court was. that it makes no difference under our act, whether the preference imputed to the debtor as an act of bankruptcy was spontaneous on his part, or was induced by the request or demand of the creditor.

3. It remains to inquire whether the petition ought to be dismissed on the ground that. a few days after it was filed, the petitioners commenced a suit at law against the respondent and have prosecuted the same to judgment and execution. The only authority cited in support of this objection is that of Ex parte Lewes. 1 Atk. 154. Upon looking at the report of the case, I find it consists only of the brief note read by the counsel at the argument, from, I believe, Eden on Bankruptcy. In that case it would appear that the petitioning creditor, after suing out a commission of bankruptcy, had imprisoned his debtor in a suit at law brought to recover his debt; and the decision was that the debtor should be discharged from such imprisonment. But the chancellor is reported to have said that. if the petitioning creditor "were to elect to proceed at law, the commission must be superseded;" and it is upon this remark that the counsel for the respondent rested his objection. The foundation, it will readily be seen, is but a slender one. I have considered it my duty

nevertheless to examine the point, and have become well satisfied that I have no right to dismiss the petition on this ground. I have been able to find no instance in which this has ever been done: while I have met with several cases from which it is plainly inferable that no such practice exists in England. The practice is (as indeed was done in the very case relied on) not to arrest the proceedings in bankruptcy, but to restrain the petitioning creditor, when necessary to prevent injustice, from proceeding at law. Thus, in the case Ex parte Bozannet, 1 Rose, 181 (see, also, 1 Henly, Bankr. 114), in which the petitioning creditor after suing out a commission of bankruptcy took out execution against the debtor, and seized his goods, Lord Elden directed the goods to be restored. In Burnaby's Case, 1 Strange, 653, it was held that a creditor who had his execution could not petition for a commission of bankruptcy, and the commission was superseded for this reason: but it was done exclusively on the ground that having the body of the debtor in execution is a satisfaction of the debt. In the case of Cohen v. Cunningham, 8 Term R. 123, even this decision was strongly questioned, and was supposed by the counsel for the plaintiff to have been overruled by Burchall's Case, 1 Atk. 143. The court admitted that these cases were apparently contradictory; but considering the doctrine of Burnaby's Case to be sound, endeavoured to reconcile the two cases by supposing that in Burchall's Case the debtor might possibly have been taken in execution after the commission was issued—thus conceding that in such case (which is evidently stronger than the present) the commission could be sustained. It is clear, therefore, that this objection cannot prevail. Where the petitioning creditor chooses to resort to a collateral remedy by suit at law from abundant caution, or from whatever other motive, doubtless the court may, upon an application for that purpose, determine, according to the circumstances of the case, whether, and to what extent, he shall be allowed to prosecute it, and whether the costs incurred by him shall. in the event of a decree of bankruptcy, be paid out of the estate of the bankrupt. A decree of bankruptcy must be entered.